2010 Ark. App. 325

**Deanna Wilson MAINERICH, Appellant**

v.

**Mark WILSON, Appellee.**

**No. CA 09–544.**

Court of Appeals of Arkansas.

April 14, 2010.

Timothy James Cullen, Tasha Taylor, Andy Taylor, Cullen & Co., PLLC, Little Rock, for Appellant.

Floyd Mattison Thomas, III, Thomas, Hickey & Shepherd, L.L.P., El Dorado, for Appellee.

KAREN R. BAKER, Judge.

Appellant Deanna Wilson Mainerich challenges the trial court's decision regarding child support asserting the following points of error: (1) The circuit court erred by holding that Mrs. Mainerich waived her daughter's child-support arrearages because there was no intent to waive the support, and because, even had she intended to waive the support, she could not have done so because the court did not conduct an inquiry into the effect of such a waiver; (2) The circuit court erred when it considered appellee's voluntary support of an adult daughter who no longer lived with him in calculating the amount of child support due and then incorrectly applied the Family Support Chart formula that would have applied had she been a minor living with appellee; (3) The circuit court erred in holding that the provisions of the Arkansas Code relating to interest and attorneys' fees in actions for child-support arrearages did not apply to this case.

Appellant cites two subpoints of error to her second assertion: (A) The circuit court erred in considering the voluntary financial support that appellee claimed to provide to the couple's adult daughter because voluntary financial support of an adult is not a permissible deviation factor under Administrative Order Number 10; (B) Even if it were permissible to consider voluntary financial support of an adult child, the court's method of calculating the amount of child support owed was improper because it improperly diluted the amount of support owed to Mrs. Mainerich's daughter. For the reasons stated herein, the circuit court's order is reversed and remanded.

On November 19, 1997, Deanna (Wilson) Mainerich and Mark Wilson divorced under an initial divorce decree, which awarded Mrs. Mainerich custody of their two daughters, Megan and Allison. The decree ordered Mr. Wilson to pay Mrs. Mainerich $82.00 per week for child support. At some point after the initial decree was entered, Mrs. Mainerich moved from El Dorado to California. She testified and showed through exhibits that Mr. Wilson owed approximately $80.00 per week under the initial divorce decree, and that by May of 2000, he had accumulated $4,587.31 in arrearages, including interest.

A contempt hearing was held in May of 2000 to address unresolved issues from the initial divorce decree relating to assets from the marriage, such as Mr. Wilson's 401K, credit card debt, and other personal property. After the hearing, the trial court asked Mr. Wilson's attorney to prepare the precedent for an order to be entered. The order was entered without the signature of approval by Mrs. Mainerich's attorney. At the hearing on this matter, both Mrs. Mainerich and her previous trial attorney testified that child-support arrearage was not an issue presented to the trial court. The issue at the previous hearing was modification of the initial decree's placement of Megan's custody with her father from her mother in order to coincide with Megan's return to living in El Dorado from California. The order stated that "[t]he parties announce to the Court that no child support is owed to either party at this time but that the issue as to future child support is reserved."

In January 2001, Mrs. Mainerich attempted to collect the arrearage through the Department of Support Services in Sonoma County, California. When she conveyed Mr. Wilson's email threatening to take her back to court if she sued for arrearage and her lack of resources to go back to court, the Department advised her to wait until Megan reached the age of majority to seek the arrearage, because she would need to go back to court anyway to establish support for Allison.

On August 2, 2004, Megan turned 18. She continued living with her father and going to school, though she later moved with her son Tristan out of her father's house and into another house on his property. Mr. Wilson testified that he continued to assist Megan and her son Tristan

financially. Allison continues to live with her mother in Wilsonville, Oregon, along with a daughter born to Mr. and Mrs. Mainerich. On January 4, 2007, an order was entered setting temporary support at $457.00 a month. On September 4, 2008, the circuit court held another hearing, this one to address issues of child-support arrearage and current child support. Mrs. Mainerich testified that Mr. Wilson owed her $11,485.95 in back child support and Mr. Wilson testified that the arrearage had been waived by the May 2000 order. He also argued that his child support should be reduced because he was voluntarily helping the couple's adult daughter financially. The court accepted that argument. Rather than adopting the amount due under the family support chart for one child and making any deviations based on that number, the court simply adopted the amount due under the family support chart for two children and divided that number by two.

On this record, we cannot determine two facts essential to the disposition of the issue regarding child-support arrearage: (1) whether the requisite judicial inquiry had been undertaken to independently evaluate the compromise and its benefits to the minor; and (2) whether the inquiry had led to the judicial determination that the compromise regarding support was in fact in the minor's best interest. Because the trial court's failure to make this inquiry would void the judgment as to the compromise, we must reverse and remand for the trial court to make these determinations. Furthermore, the court erred in both considering Mr. Wilson's asserted financial assistance to the parties' adult daughter and in its method of calculating support. Therefore, we reverse and remand on those issues as well.

■ A judicial inquiry into the appropriateness of compromise regarding a minor's

interests is mandatory. In *Davis v. Office of Child Support Enforcement,* 322 Ark. 352, 908 S.W.2d 649 (1995), a mother brought a suit to establish paternity after a prior action had been dismissed ¦₅with prejudice based on a settlement of all contested and disputed issues. The Arkansas Supreme Court held that the judgment of dismissal with prejudice was void on its face, stating that under its laws, the interests of a minor could not be compromised by a guardian without approval by the court. The *Davis* court reasoned:

> It has long been the law in Arkansas that the interests of a minor cannot be compromised by a guardian without approval by the court. *See, e.g., Rankin v. Schofield,* 70 Ark. 83, 66 S.W. 197 (1902). It is not sufficient that a court be made aware of a compromise agreement and that it is agreeable to the guardian; rather, the court must make a judicial act of investigation into the merits of the compromise and into its benefits to the minor. *Id.; Kuykendall v. Zachary,* 179 Ark. 478, 16 S.W.2d 590 (1929). Any judgment by a court that compromises a minor's interest without the requisite investigation is void on its face. *Id.; Rankin v. Schofield,* 81 Ark. 440, 98 S.W. 674 (1905).

*Davis,* 322 Ark. at 355–56, 908 S.W.2d at 651–52 (1995).

■ Accordingly, a lower court's failure to make the required judicial investigation into the merits of the compromise agreement and into its benefits to the minor voids any judgment the court enters regarding that compromise agreement. Furthermore, as a result of Ark.Code Ann. § 9–14–107(c), parties cannot with any security enter into agreements regarding child support that vary by even a small amount from the family-support chart.

Although there are numerous reasons why parties would enter into such agreements, counsel for such parties should consider setting out in the support order reasons for the variance that would constitute a "rebuttal" of the chart and obtaining the approval of the trial court before entering into such agreements in the future. *Alfano v. Alfano,* 77 Ark. App. 62, 70, 72 S.W.3d 104, 109 (2002).

■ ¦₆On this record, we cannot determine whether the trial court made the required judicial investigation into the compromise agreement prior to the agreement's acceptance by the court. Accordingly, the trial court is reversed on the first point of error. The matter is also remanded for a finding as to whether the trial court that accepted the asserted compromise made the required judicial investigation and findings. If the trial court determines that the required judicial investigation was not made, then any asserted agreement is void. The trial court may then proceed accordingly.

■ We reverse and remand the trial court on the second point as well. Appellant's argument contains two distinct allegations of error. First, appellant argues that the trial court erred in considering Mr. Wilson's claim that he voluntarily supported the couple's adult daughter. Second, she asserts that the calculation method was in error.

While appellant argues that support for an adult child is not an acceptable factor, we cannot say that as a matter of law the support of an adult child can never be considered a factor. Under Section V, Deviation Considerations, the court "shall" include the "support required and given by a payor for dependent children, even in the absence of a court order." Our supreme

court has noted that it is, of course, the duty of parents to contribute to the support of their children even after they are of age if the circumstances are such as to make it necessary. *Upchurch v. Upchurch,* 196 Ark. 324, 324, 117 S.W.2d 339, 340 (1938). The court has held the duty to support a child does not cease at majority *if* the child is mentally or physically disabled in any way *at* majority and needs support. *Eskridge v. Eskridge,* 216 Ark. 592, 226 S.W.2d 811 (1950) (physically injured at birth); *Petty v. Petty,* 252 Ark. 1032, 482 S.W.2d 119 (1972) (epilepsy); *Elkins v. Elkins,* 262 Ark. 63, 553 S.W.2d 34 (1977) (dyslexia). The court has also extended the duty of a parent to support a child beyond majority who did not have a handicap or disability. *Matthews v. Matthews,* 245 Ark. 1, 430 S.W.2d 864 (1968) (requiring a father to continue child support for six months after his daughter reached majority so she could finish high school considering this exception to the age of majority as only a "slight extension" of the father's duty and noting that a high school diploma is extremely important to a person seeking to support herself).

■ While most parents willingly assist their adult children in obtaining a higher education which to many appears to be increasingly necessary in today's fast-changing world, any duty to do so is a moral rather than a legal one. Parents who remain married while their children attend college may continue supporting their children for a period of years past the age of majority, but such support may be conditional or may be withdrawn at anytime, and no one may bring an action to enforce continued payments. It would be fundamentally unfair for courts to enforce these moral obligations of support only against divorced parents while other parents may do as they choose. *Towery v. Towery,* 285 Ark. 113, 114–17, 685 S.W.2d 155, 156–58 (1985) (citing *Grapin v. Grapin,* 450 So.2d 853 (Fla.1984)).

Accordingly, it was error for the trial court to consider funds expended by the father to support his adult daughter while she was obtaining a higher education as a factor to deviate from the presumptive amount of child support without additional evidence that the child was legally dependent. On remand, the trial court shall not consider that fact as a factor for deviation if it finds that deviation is appropriate under the facts of this case.

■ If the trial court determines that the presumptively correct amount of child support is not appropriate, it must start its calculation from the proper reference to the chart. Reference to the Family Support Chart by a trial court is mandatory in setting a divorce parent's child-support obligations, but amounts stated in the chart are not mandatory; the chart establishes a rebuttable presumption of the appropriate amount of child support, which can only be explained away by written findings stating why the chart amount is unjust or inappropriate. *Black v. Black,* 306 Ark. 209, 812 S.W.2d 480 (1991). Administrative Order Number 10 sets forth the presumptively correct amounts of child support based upon income. There is a rebuttable presumption of correctness for one child. The trial court in this case merely took the child support due for two children under the chart and divided that amount by two. Merely dividing the presumptively correct amount of child support by the number of dependents is error. *Moreland v. Hortman,* 72 Ark. App. 363, 39 S.W.3d 23 (2001). Even if evidence had supported the conclusion that the adult daughter was dependent, it would be error to merely

divide the presumptively correct amount by two. As discussed above, no evidence could support the finding that Megan was dependent; therefore, the presumptively correct chart amount is the amount for one child. On remand, if the trial court determines that a deviation from that amount is warranted, then it is required to set forth the factors supporting the variance.

Because we reverse and remand for a finding regarding whether the order regarding the asserted compromise is void, the point of error regarding interest is moot; however, upon remand if the trial court finds that an order incorporating an agreement regarding child-support arrearage was void, we direct the trial court to our decision in *Mills v. Mills*, 2009 Ark. App. 175, 315 S.W.3d 707.

Reversed and remanded.

GRUBER and MARSHALL, JJ., agree.