**In re Jennifer Ann BALLINGER, Debtor.**

**No. 4:13–bk–11699.**

United States Bankruptcy Court, E.D. Arkansas, Little Rock Division.

Nov. 25, 2013.

Caroline Curry Lewis, Brad Hendricks Law Firm, Little Rock, AR, for Debtor.

## ORDER

JAMES G. MIXON, Bankruptcy Judge.

Jennifer Ballinger (Debtor) filed for protection under Chapter 7 of the United States Bankruptcy Code on March 22, 2013. On April 15, 2013, the Debtor filed a motion to avoid a lien pursuant to 11 U.S.C. 522(f) with a 21–day notice of opportunity to object. On May 8, 2013, an order was entered avoiding the lien. On May 14, 2013, Teresa Perkins (Perkins), the alleged judgment lien creditor, filed a motion to set aside the order avoiding the lien, alleging lack of notice. On June 7, 2013, the Debtor filed a response alleging proper notice. Perkins filed a response. A hearing was held on June 21, 2013, whereby the Court granted the motion to set aside the order avoiding the lien, finding that service was inadequate. The Debtor filed a renewed motion to avoid Perkins' lien on July 1, 2013. On July 8, 2013, Perkins filed a response and then an amended response on July 11, 2013.

Trial on the merits was held in Little Rock, Arkansas, on August 23, 2013, and at the conclusion of the trial the matter was taken under advisement. Both parties have filed post-trial briefs with the Court.

This Court has jurisdiction to decide this matter in accordance with 28 U.S.C. § 1334 and § 157(a). The matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J) & (K).

## I. FACTS

The Debtor and Juan Sebastian Nunez–Duron (Nunez) were married on September 8, 2011. (Tr. at 24.) Previous to his marriage to the Debtor, Nunez was married to Teresa Nunez (now Perkins). Nunez and Perkins had a child who was born

on December 26, 2003. (Ex. 9.) Subsequently, Nunez and Perkins divorced. Pursuant to the divorce decree signed on December 12, 2005, Nunez and Perkins were each required to maintain life insurance coverage with the other as the beneficiary in the amount of $150,000.00 until the minor child would reach the age of majority. (Ex. 9.) Nunez was ordered to pay child support based on the family support chart amount in another paragraph, which was in the amount of $360.00 a month. (Ex. 9.) Neither party was ordered to pay alimony to the other. (Ex. 9.)

Sometime after the divorce decree, Nunez let his insurance policy lapse. Nunez purchased a new policy for $150,000.00 with the Debtor named as the beneficiary. Nunez also purchased a home in which the Debtor and Nunez resided as a married couple until his death on November 21, 2011. (Tr. at 24 & 55.) The house was titled in Nunez's name alone.

Sometime after Nunez's death, the Debtor received the $150,000.00 in life insurance proceeds.[1] At some point after receiving these proceeds but before May 15, 2012, the Debtor spent about $44,000.00 of the proceeds.[2] (Tr. at 42.)

A probate proceeding was filed in Pulaski County and in December or January of 2011, Perkins filed a claim in the probate proceeding for the insurance proceeds. On March 13, 2012, the probate court authorized the Debtor to buy the same house in which she lived with Nunez from his estate. (Ex. 5 & Tr. at 52.) Sometime in late March of 2012, Perkins filed a petition with the probate court to impose a constructive trust on the remaining insurance proceeds. (Tr. at 60–62.) On May 15, 2012, the divorce court issued a temporary restraining order stating that the Debtor, "should be restrained from dispersing any of the insurance proceeds which she still has until further order of the Court." (CR Ex. 1.)

On June 28, 2012, the Debtor purchased the house in Pulaski County from Nunez's estate for $155,813.47, consisting of a loan for $146,155.00 and cash in the sum of $5,210.74. (Ex. 1, 3, 5 & 5; Tr. at 25.) The Debtor testified that the company she worked for lent her the money for the cash payment and that she used no part of the insurance proceeds to purchase the home. (Tr. at 28 & 52.)

On September 2012, the Debtor paid $100,000.00 of the life insurance proceeds to Perkins, pursuant to an order of the probate court. (Tr. at 65.) On January 29, 2013, the probate court entered a judgment against the Debtor and in favor of Perkins in the amount of $44,575.99. (Ex. 6.) The Debtor filed bankruptcy and listed the current value of her home at $154,000.00, with a secured claim in favor of the lending bank in the amount of $144,599.00, and claimed her federal exemption on the home in the amount of $9,401.00. (Ex. 7 & 8.)

## II. ARGUMENT

The Debtor argues that the lien which was created by the recording of the $44,575.99 judgment in favor of Perkins against the Debtor should be avoided pursuant to 11 U.S.C. § 522(d) & (f). The Debtor argues the debt does not qualify as a domestic support obligation. The Debtor also argues that the order from the probate court is not an enforceable judg-

---

**1.** Later, the Debtor explained that actually she only received about $144,000.00 rather than $150,000.00 because of "[t]axes, I think." (Tr. at 47 & 65.)

**2.** It is unclear exactly what the Debtor spent the money on. The Debtor testified that some of the money was used to pay off her student loans. (Tr. at 49.)

ment and the order from the divorce court was never reduced to a judgment.

Perkins argues that the Debtor is not entitled to her exemption because she acquired her interest in the property in violation of the state court's temporary restraining order. Perkins also argues the judgment does not impair the exemption because the home is worth more than the mortgage and the judgment. Finally, Perkins contends the judgment is nondischargeable because it is a domestic support obligation.[3]

### III. DISCUSSION

11 U.S.C. § 522(f)(1)(A) provides that a debtor, "may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption ... if such a lien is a judicial lien, other than a judicial lien that secures a debt of a kind that is specified in section 532(a)(5)." A debt specified in 11 U.S.C. § 523(a)(5) is "a domestic support obligation" debt.

■ In order to avoid a lien, three conditions have to be met: (1) the lien must be a judicial lien; (2) the lien must fix on an interest of the debtor in property; (3) the lien must impair an exemption of the debtor. *Taylor v. Taylor (In re Taylor)*, 271 B.R. 157, 160 (Bankr.W.D.Ark.2001) The definition of a domestic support obligation was added to the Code by BAPCPA in 2005, as was the provision providing that domestic support obligations were unavoidable. Therefore, subsequent to 2005, a fourth condition must be met in order to avoid a lien, that is, (4) the lien must not secure a domestic support obligation debt.

■ An objecting party has the burden of proving that exemptions are not properly claimed. Fed. R. Bankr.4003. As the movant, the Debtor carries the burden of proving by a preponderance of the evidence every element required to establish his or her entitlement to lien avoidance under 522(f). *In re Armenakis*, 406 B.R. 589, 604 (Bankr.S.D.N.Y.2009) (citing *In re Banner*, 394 B.R. 292, 300 (Bankr.D.Conn.2008)); *In re Uhrich*, 355 B.R. 783, 788 (Bankr.D.Neb.2006); *In re Tinker*, 355 B.R. 380, 383 (Bankr.D.Mass. 2006); *Conner v. Wrobel (In re Conner)*, 300 B.R. 644, 648 (Bankr.W.D.Pa.2003); *In re Soost (In re Soost)*, 262 B.R. 68, 74 (8th Cir. BAP 2001). Based on the above case law and the lack of any allocation of the burden in the statute, the Court finds that the Debtor has the burden to prove by a preponderance that the lien does not secure a debt that resulted from a domestic support obligation. See also *Deangelis v. Lacoste (In re Deangelis)*, 2010 WL 1509111, *2 (Bankr.M.D.Pa.2010).

#### A. Does Perkins have a judicial lien?

■ A judicial lien is a "lien obtained by a judgment...." 11 U.S.C. § 101(36). In other words, "a judicial lien is an interest which encumbers a specific piece of property granted to a judgment creditor who was previously free to attach any property of the debtor's to satisfy his interest but who did not have an interest in a specific piece of property before the occurrence of some judicial action." *Taylor v. Taylor (In re Taylor)*, 271 B.R. 157, 160 (Bankr. W.D.Ark.2001) (quoting *Boyd v. Robinson (In re Boyd)*, 31 B.R. 591, 594 (D.Minn. 1983)). A judgment granted by an Arkansas court,

> shall be a lien on the real estate owned by the defendant in the county in which the judgment was rendered from the date of its rendition only if the clerk of the court which rendered the judgment maintains a permanent office within the county, at which office permanent records of the judgments of the court are

---

**3.** Perkins makes other arguments at trial but she did not raise those arguments in her brief.

The Court considers the arguments not raised in her brief to be abandoned.

continuously kept and maintained, and the judgment has been filed with the circuit clerk.

Ark.Code Ann. 16–65–117(a)(1).

▮ The Debtor makes an argument in her brief that the divorce decree was never reduced to a judgment and the probate judgment is invalid because the court lacked subject matter jurisdiction since the Debtor was never served with a summons and complaint in the probate proceeding. It does not matter that the divorce decree was not reduced to a judgment because Perkins has a judgment from the probate court that has not been appealed and is entitled to full faith and credit. (Ex. 6.) Pursuant to the *Rooker–Feldman* doctrine, this Court is not an appellate court of the state courts and does not have jurisdiction to decide that the state court judgment was void. *Snider v. City of Excelsior Springs, Missouri,* 154 F.3d 809, 812 (8th Cir.1998). There is no procedural due process exception to the *Rooker–Feldman* doctrine. *Snider v. City of Excelsior Springs, Missouri,* 154 F.3d 809, 812 (8th Cir.1998); *Postma v. First Federal Savings & Loan of Sioux City,* 74 F.3d 160, 162 n. 3 (8th Cir.1996). The Debtor's concerns must be addressed to the state court which entered the judgment.

▮ The Debtor bought the home from Nunez's estate on June 28, 2012. The judgment of the probate court out of Pulaski County, Arkansas, was entered on January 29, 2013, which resulted in a lien affixing to the Debtor's interest in her home as of that date. Therefore, Perkins has a valid judicial lien that affixed to the Debtor's interest in her home.

**B. Does the lien impair the exemption?**

A lien impairs an exemption to the extent that the sum of (1) the lien, (2) all other liens on the property, and (3) the amount of the exemption the debtor could claim if there were no liens on the property exceeds the value that the debtor's interest in the property would have in the absence of any liens. 11 U.S.C. § 522(f)(2)(A). 11 U.S.C. § 522(d) provides that a debtor may exempt his or her "aggregate interest, not to exceed $22,975 in value, in real property ... that the debtor ... uses as a residence."

Perkins argues the Debtor is not entitled to her exemption because the home was bought in violation of the temporary restraining order. The evidence is that the Debtor did not use any of the insurance proceeds for the purchase of her home and therefore the purchase of the home was not in violation of the temporary restraining order. The Court finds that the Debtor is entitled to take her elected federal exemption pursuant to § 522(d).

Pursuant to § 522(d), the Debtor was allowed to claim up to $22,975.00 as her exemption; she claimed an exemption in the amount of $9,401.00. Perkins' lien in the amount of $44,575.99, plus the mortgage in the amount of $144,599.00, plus the allowed exemption of $22,975.00 comes to a sum of $212,149.00. The value of the property according to Schedule C is $154,000.00 and this value was not disputed at trial.[4] The total amount of $212,149.00 exceeds the Debtor's $154,000.00 interest. Accordingly, Perkins' lien impairs the Debtor's exemption.

**C. Is the debt a domestic support obligation?**

To qualify as a domestic support obligation, the debt must satisfy these four requirements:

---

**4.** Perkins argues in her post trial brief that the lien is not impaired and attaches an exhibit that the county has appraised the property for $208,250.00, in order to prove this assertion. This valuation was not introduced at trial and cannot be considered.

[the debt must be]

(A) owed to or recoverable by—

 (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or

 (ii) a governmental unit . . .

(B) in the nature of alimony, maintenance, or support . . . of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;

(C) established . . . by reason of . . .

 (i) a separation agreement, divorce decree, or property settlement agreement;

 (ii) an order of a court of record . . .

(D) not assigned to a nongovernmental entity, unless . . . assigned voluntarily . . . for the purpose of collecting the debt.

11 U.S.C. § 101(14A).

Previously, §§ 523(a)(5) and 507(a)(7), which deals with dischargeability and priority of claims, focused on any "debt to a spouse, former spouse or child of a debtor." Bankruptcy courts in the Eighth Circuit and specifically this Court have ruled that BAPCPA did not substantively change §§ 523(a)(5) and 507(a)(7); therefore, the holding in *Holliday v. Kline (In re Kline)*, 65 F.3d 749 (8th Cir.1995) is still binding precedent. *In re Andrews*, 434 B.R. 541, 546–547 (Bankr.W.D.Ark.2010) (citations omitted). The case at bar does not deal with the priority and dischargeability of domestic support obligations as *Kline* did; however, the Court finds the logic of *Kline* is equally informative when looking at 11 U.S.C. § 101(14A)(A) in terms of § 522(f)(1)(A).

 *Kline* stands for the proposition that debts can qualify as support and be determined nondischargeable pursuant to § 523 even if they are owed to parties other than the payees in the statute, if the former spouse could be held responsible for the debt in question. *In re Kline*, 65 F.3d 749 (8th Cir.1995). As one court explained *Kline*, an exception to the plain meaning of the statute only occurs, "when the obligation is payable directly to a third party . . . but only if the former spouse is also obligated for the fees." *In re Andrews*, 434 B.R. 541, 548 (Bankr.W.D.Ark. 2010) (quoting *Simon, Schindler & Sandberg v. Gentilini (In re Gentilini)*, 365 B.R. 251, 256 (Bankr.S.D.Fla.2007)); see also *Kassicieh v. Battisti (In re Kassicieh)*, 425 B.R. 467, 477 (Bankr.S.D.Ohio 2010).

It is clear that this debt does not fit within the enumerated definitions found in § 101(14A)(A). Perkins is not a spouse or former spouse of the Debtor. Perkins also does not fit within the *Kline* exception because Perkins is not liable for any of the $44,575.99 that is not paid by the Debtor. Therefore, the debt does not fit within the definition of a domestic support obligation because the debt cannot pass the first requirement of § 101(14A).

 Furthermore, even if the debt could pass the first requirement, the Court finds that the debt does not pass the second requirement of § 101(14A). The second requirement is that the obligation be, "in the nature of alimony, maintenance, or support . . . of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated."

Whether the debt is a nondischargeable support obligation is a question of federal bankruptcy law, not state law. *Tatge v. Tatge (In re Tatge)*, 212 B.R. 604, 608 (8th Cir. BAP 1997) (citing *Williams v. Williams (In re Williams)*, 703 F.2d 1055, 1056 (8th Cir.1983) (quoting H.R.REP. NO. 95–595, at 364 (1977),

U.S.Code Cong. & Admin.News 1978, pp. 5963, 6319–20)).

Factors considered by the bankruptcy courts in determining whether particular debts are intended to serve as support include the parties' relative financial conditions at the time of divorce, the parties' respective employment histories and prospects for financial support, the fact that one party or another receives the marital property, the periodic nature of the payments, and whether it would be difficult for the former spouse and children to subsist without the payments. *Id.* at 608 (citing *Friedkin v. Sternberg (In re Sternberg)*, 85 F.3d 1400, 1406 (9th Cir.1996); *Williams,* 703 F.2d at 1056; *Boyle* [*v. Donovan* ], 724 F.2d [681] at 683 [ (8th Cir.1984) ]; *Shaver v. Shaver,* 736 F.2d 1314, 1316 (9th Cir.1984)).

*In re Andrews,* 434 B.R. 541, 548–549 (Bankr.W.D.Ark.2010).

■ The record, pursuant to the terms of the divorce decree, provides that the parties divided their personal property, no alimony was ordered, and that Perkins received full custody of the child. Nunez was ordered to pay the family support chart amount of child support in the amount of $360.00 a month until the child reached the age of majority and both parties were to maintain the life insurance coverage with the other party as the beneficiary. The record does not contain evidence regarding the parties' relative financial conditions at the time of divorce, Perkins or Nunez's employment histories or prospects for financial support, or Perkins' difficulty in subsisting without the child support payments or the life insurance proceeds.

The minor child was less than a month shy of turning eight years old on the date of Nunez's death. (Tr. at 59.) If Nunez had paid the child support he owed Perkins for ten years Perkins would have received $43,200.00.[5] Perkins has already received $100,000.00 in life insurance proceeds from the Debtor. The Court does not find that the amount of money over and above the amount of child support Nunez owed Perkins, had he lived, is in the nature of a support. This Debtor has never been responsible for paying child support for the benefit of her deceased husband's minor child. It would work a manifest injustice to stretch the definition of domestic support obligation to include a debt owed to the Debtor's deceased spouse's ex-spouse for life insurance proceeds in excess of the child support the deceased spouse would have owed had he survived. Accordingly, the lien that resulted from the probate judgment cannot be called a lien securing a domestic support obligation. See *Mainerich v. Wilson,* 2010 Ark. App. 325, 373 S.W.3d 923, 927 (2010) ("as a result of Ark.Code Ann. § 9–14–107(c) parties cannot with any security enter into agreements regarding child support that vary by even a small amount from the family-support chart"); see also *Riser v. Riser,* 7 Wash.App. 647, 650, 501 P.2d 1069 (1972) ("Life insurance provision, over and above a father's obligation to support and maintain his minor and unemancipated children, is a property provision.")

Based on the evidence, the Court finds that the $44,575.99 judgment does not fit within the definition a domestic support obligation pursuant to § 101(14A) and therefore is subject to avoidance.

**5.** To arrive at this number the Court took 120 (the number of months found in ten years) and multiplied it by 360 (the amount of money the Debtor was ordered to pay monthly).

### D. Other Arguments

Perkins argues that pursuant to 11 U.S.C. § 523 the debt is not dischargeable because it is a domestic support obligation. However, whether or not the debt is dischargeable is a matter for the adversary proceeding that will be heard on February 4, 2014. See Fed. R. Bankr.Proc. 7001(4).

## IV. CONCLUSION

The Debtor's motion to avoid the lien which was created by the recording of a judgment against the Debtor on January 29, 2013 in the amount of $44,575.99 is granted.

IT IS SO ORDERED.